IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Hancy Madsen Hawkins,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>    Defendant. | ) Civil Action No. 8:08-3455-HMH-BHH<br>)<br>)<br>)<br>)<br>) **REPORT AND RECOMMENDATION**<br>) **OF MAGISTRATE JUDGE**<br>)<br>)<br>) |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Nancy Madsen Hawkins, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was born in 1952, and was 36 years old when her insured status expired on December 31, 1988. (R. at 114). She has a Master's Degree in special education, and has worked as teacher. (R. at 120, 124, 523-26). She last worked in May 1997. (R. at 524-24).

The plaintiff protectively filed application for DIB on February 27, 2007, alleging an onset disability date of June 1, 1987,[2] nearly 20 years earlier, due to multiple sclerosis, headaches, fibromyalgia and anxiety. (R. at. 114-25.) Her application was denied in initial and reconsidered determinations. (R. at 16-18, 58-60, 63-67, 114-15.) Following a hearing

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2] This is an amended onset date. The plaintiff originally alleged her disability onset date was December 31, 1985, but since she worked after 1985, she amended her onset date to June 1,1987. (R. at 524-26.)

before an Administrative Law Judge (ALJ), which was held on May 2, 2008, (R. at 521-42), the ALJ found the plaintiff did not have any "severe" impairments and was, therefore, not disabled within the meaning of the Act. (R. 10-15.) The Appeals Council denied the plaintiff's request for review (R. at 2-4), thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant last met the insured status requirements of the Social Security Act on December 31, 1988.
>
> (2) The claimant did not engage in substantial gainful activity during the period from her amended onset date of June 1, 1987, through her date last insured of December 31, 1988 (20 CFR 404.1520(b) and 404.1571 *et seq*.)
>
> (3) Through the date last insured, the claimant had the following medically determinable impairment: non-inflammatory musculoskeletal pain (20 CFR 404.1520(c)).
>
> (4) Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months: therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521).
>
> (5) The claimant was not under a disability as defined in the Social Security Act, at any time from [June 1, 1987], the alleged onset date, through December 31, 1988, the date last insured (20 CFR. 404.1520(c)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

2

>     has lasted or can be expected to last for at least 12 consecutive
>     months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial

evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to use the correct diagnosis of multiple sclerosis ("MS"); (2) failing to evaluate the plaintiff's condition in light of Listing 11.09A; and (3) failing to employ the expert opinion of a medical advisor as to the plaintiff's onset date of disability and the nature of MS.

To the Court, this is not an easy decision. The plaintiff suffers from multiple sclerosis and none of the parties deny it. That condition is a devastating one and frustratingly illusive, diagnostically. As the plaintiff contends, it is even conceivable, if not likely, that she suffered the condition, undiagnosed, during the relevant period and prior to the expiration of her last insured date of December 31, 1988 (R. at 114).

4

The problem, however, is that the record, prior to December 31, 1988, does not speak of limitations which are actually disabling. This fact is fatal to almost every one of the plaintiff's objections to the ALJ's decision.

The plaintiff's first assignment of error is that the ALJ used the wrong diagnosis insofar as he refers to it as "non-inflammatory musculoskeletal pain" instead of multiple sclerosis. She argues that if the ALJ had viewed the diagnosis properly, he would have come to a different conclusion. The point seems dubious, and the plaintiff's objection fails on two accounts. First, the plaintiff concedes that "non-inflammatory musculoskeletal pain" was, in fact, the medical diagnosis identified prior to the plaintiff's last insured date, not multiple sclerosis. (Pl. Brief at 5.) Second, the nomenclature of the diagnosis, or even the specific diagnosis itself accurately identified, is not dispositive of the issue of disability. The mere diagnosis of an impairment does not establish that a condition is disabling; there must be a showing of related functional loss. *See Gross v. Heckler*, 785 F.2d 1163,1165 (4th Cir. 1986) (finding that diagnosed arthritis, poor vision, and ulcers responded to basic medical attention and therefore were not disabling).

The plaintiff has made no real argument that there exists evidence of a disabling degree of functional loss prior to December 1988. She focuses exclusively on whether the ALJ should have treated her as having been diagnosed with MS during the relevant period. She never explains how her condition would have actually prevented her from working. Instead, she suggests that the very diagnosis of MS would have required the ALJ to consider disability in accordance with Listing 11.09A, 20 C.F.R. pt. 404, subpt. P, app. 1 § 11.09A. This is a misapprehension of the law. If the plaintiff fails to meet her burden of showing that she had a severe impairment at step two of the sequential evaluation process, the ALJ does not consider whether that impairment meets any Listing at step three. *See Pass* v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (if a claim fails at any step of the process, the ALJ need not advance to the subsequent steps); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). Accordingly, even if the ALJ had accepted the MS diagnosis it would

5

not have entitled the plaintiff, automatically, to a consideration of Listing 11.09A.[3]  The plaintiff was still required to demonstrate that the MS was, in fact, legally severe.

To establish a severe impairment, a claimant must provide medical evidence that her impairments significantly limit her ability to perform "basic work activities."  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 146 n.5 (1987) ("An impairment is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities"; it is Plaintiff's burden to show she has a severe impairment); 20 C.F.R § 404.1520(c).  "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984); *Albright v. Commissioner of Social Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999).  The ALJ noted that there was literally no treatment between the alleged disability onset date of June 1, 1987 and the expiration of her insured status on December 31, 1988. (R. at 14.)  The ALJ considered the plaintiff's subjective complaints in accordance with applicable law, *Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996), but found them incredible for want of any treatment during the relevant period.  Accordingly, he had no basis to conclude that the impairment actually affected her ability to perform basic work activities in any respect.  This conclusion was based on substantial evidence and in accord with the proper legal framework.

Again, the plaintiff, on appeal, has not attempted to demonstrate any inability to perform work.  But out of an abundance of caution, the Court will at least recount the plaintiff's proffered evidence from dates prior to when her insured status expired.  Without any specific cites to the record, the plaintiff emphasizes medical records, including evidence of reoccurring hip pain in March 1980, December 1981, March 1981, January 1982 (she was told to use a cane), February 1982, and March 1982; a report of acute tenderness near

---

[3]  The ALJ, therefore, was not in error, as the plaintiff contends, for failing to perform a listing analysis.

the sciatic notch in October 1979; the report of an injury to her left forearm that caused a hematoma that diminished and then returned in September 1980; the report of transient mild muscle spasms and dysesthesias ii(an unpleasant abnormal sensation) in both upper extremities in September 1981, the report of dysesthesias in her right hand in March 1982, and the report of continued tingling and dysesthesias in her right hand in July 1982.

At the end of July 1982, Dr. Robert W. Bowels admitted the plaintiff into Roper Hospital to be treated by traction. (Pl. Ex. C.) The discharge summary summarizes Ms. Hawkins' condition up to that point. It indicates that she experienced recurrent episodes of painful motion and discomfort in her back and hip areas; that she had "episodes of exacerbation of painful stiffness in the back and hip;" that she had episodes of vague muscle discomfort in the intrascapular and shoulder areas; that "the pain recently had worsened with a rather severe exacerbation associated with . . . strenuous activity, but not trauma." *Id*. The discharge summary also notes that the pain was incapacitating, associated with dysesthesias and numbness that did not follow any particular pattern and sometimes she had numbness in both legs that ascended to the hips on both legs. *Id*.

In a letter, dated October 17, 1985, Samuel H. Rosen, M.D., a psychiatrist, noted that the plaintiff's medical history was long and complicated and was "primarily manifested by pain in her muscles and feeling of numbness in her legs." (Pl. Ex. D.)

Of course, as discussed, none of this evidence pertains to the period of time between June 1, 1987, and December 31, 1988. Moreover, even if all of the evidence was fully credited, the Court cannot determine how the ALJ can be said to have erred in dismissing it as not demonstrating an inability to perform basic work functions. The evidence does not speak to the issue. And, even if a reasonable mind might feel different, the ALJ had substantial evidence to conclude that the evidence was not indicative of a severe impairment – namely, lack of treatment in the relevant period. *See Blalock*, 483 F.2d at 775; *Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir. 1984) ("[I]t is immaterial that eight medical witnesses disagreed with the ALJ's conclusion, provided that one such

7

witness gave sufficient probative evidence."); *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (finding that ALJ did not err by considering inconsistency between the claimant's level of treatment and her claims of disabling symptoms).

To the extent the plaintiff complains that the ALJ did not consider the whole record, the Court would emphasize that the ALJ expressly considered and cited evidence accumulated even after the expiration of her insured status. Specifically, he noted that a Dr. Alan Nussbaum, on May 14, 1990, reported that the plaintiff had been under his care for several years and there had been no evidence of any systemic inflammatory disease. (R. at 14.) The ALJ's decision was adequately thorough.

The plaintiff would also ask the Court to find the ALJ in error for not calling a medical expert to determine the onset of the plaintiff's MS in the absence of medical records during the relevant period and to explain the "insidious nature of Multiple Sclerosis." (Pl. Brief at 8-9.) The Court does not believe a medical expert's opinions on these matters would have affected the outcome. First, even if a medical expert had informed the ALJ that in his professional opinion that the onset of MS in the plaintiff occurred sometime prior to December 1988 that would not, of itself, demonstrate MS to a severe degree as required at step two. As stated, the sheer diagnosis is insufficient. The ALJ rejected severity not because of a want of diagnosis but because there was no evidence of diminution in the plaintiff's ability to perform work. That remains the flaw in her case. Second, a general education on the "insidious nature of Multiple Sclerosis" unfortunately would not say anything about the plaintiff's condition specifically. The Court is not unacquainted with the aggressive and terrible nature of the condition. But neither the Court, the ALJ, nor any expert may simply speculate about the plaintiff's particular case. It is her burden to produce evidence. The significant passage of time has made that difficult. The ALJ, however, cannot be held accountable for it.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

                                                  s/BRUCE H. HENDRICKS
                                                  UNITED STATES MAGISTRATE JUDGE

October 9, 2009
Greenville, South Carolina